IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **CURTIS A. SAYLES,** )<br>  )<br> Plaintiff, )<br>  )<br> vs. )<br>  )<br> **MICHAEL J. ASTRUE,** )<br> **COMMISSIONER OF SOCIAL** )<br> **SECURITY** )<br> **ADMINISTRATION,** )<br>  )<br> Defendant. ) | Civil Action Number<br>**6:11-cv-2285-AKK** |

### MEMORANDUM OPINION

Plaintiff Curtis A. Sayles ("Sayles") brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Doc. 1. This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

### I. Procedural History

Sayles filed his application for Title II disability insurance benefits ("DIB")

and Title XVI Supplemental Security Income ("SSI") on April 27, 2007, alleging a disability onset date of July 1, 2003, due to obesity. (R. 28, 547). After the SSA denied his applications on October 1, 2007, (R. 35-39, 549-553), Sayles requested a hearing on January 26, 2008, (R. 40-41), which he received on October 10, 2008, (R. 559-633). At the time of the hearing, Sayles was 37 years old with an eighth grade education. (R. 606-607). His past relevant work included medium, skilled work as a combination welder; heavy, unskilled work as a building maintenance worker; light, unskilled work as a short order cook; and medium, semi-skilled work as a furniture assembler. (R. 623-624). Sayles had not engaged in substantial gainful activity since July 1, 2003. (R. 17).

    The ALJ denied Sayles' claims on January 22, 2009, (R. 24), which became the final decision of the Commissioner when the Appeals Council refused to grant review on April 22, 2011, (R. 5-8). Sayles then filed this action on June 27, 2011, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Doc. 1.

## II. Standard of Review

    The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

<u>produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. As such, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV. The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Sayles is

correct that the ALJ committed reversible error. In that regard, the court notes that, performing the five step analysis, the ALJ initially determined that Sayles had not engaged in substantial gainful activity since his alleged onset date, and therefore met Step One. (R. 17). Next, the ALJ found that Sayles suffered from the following severe impairments: "degenerative disc disease; residuals, status post left femur fracture; hypertension; obesity; and adjustment disorder, with mixed anxiety and depressed mood." *Id.* The ALJ then proceeded to the next step and found that Sayles failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 19). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that:

> [T]he claimant has the residual functional capacity . . . [to] meet the exertional demands of light work, however based upon the use of a cane he would be limited to sit/stand at will type of job. He can perform . . . low stress jobs with an SVP of 2 or less involving simple work-related decisions. He can understand and remember simple instructions but cannot handle detailed tasks or instructions. He can concentrate for two-hour periods across an eight-hour workday if he is allowed all customary breaks. He is likely to miss one day of work a month due to emotional problems. Any contact with the public should be infrequent and non-intensive. Supervision should be tactful and non-threatening. Any changes in the workplace should be infrequent and gradually introduced. He occasionally can operate foot controls. He occasionally can climb ramps and stairs; balance;

> stoop; kneel; and crouch. He cannot work on ladders, ropes, or scaffolds. He has peripheral vision difficulty but this would not prevent detailed, close work. He cannot work with exposure to hazardous machinery or unprotected heights. He cannot perform commercial driving.

(R. 20). Moreover, in light of Sayles's residual functional capacity ("RFC"), the ALJ held that Sayles is "unable to perform any past relevant work." (R. 22). Lastly, in Step Five, the ALJ considered Sayles' age, education, work experience, and RFC, and determined that "jobs exist in significant numbers in the national economy that he can perform." (R. 23). Because the ALJ answered Step Five in the negative, the ALJ found that Sayles "has not been under a disability, as defined in the Social Security Act, from July 1, 2003, through the date of this decision." (R. 24). *See also McDaniel*, 800 F.2d at 1030.

## V. Analysis

The court turns now to Sayles' contentions of error: the ALJ (1) improperly found that Sayles could perform light work because his use of a cane precludes all light work, (2) improperly required the Vocational Expert ("VE") to assume that a claimant who uses a cane can perform any job with a sit/stand option, and (3) failed to develop the medical record regarding Sayles' diabetes, and (4) the Appeals Council erroneously refused to consider the July 12, 2010 Functional Assessment submitted by Sayles' treating physician, Dr. Muhammad W. Ali ("Dr.

Ali"). *See* doc. 9, at 14-19. The court addresses each contention in turn.

    A.    <u>Ability to Perform Light Work</u>

Sayles contends that the stated RFC is not supported by the substantial evidence because his "use of a cane would preclude all light work. Light work 'involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.' 20 C.F.R. §§ 404.1567(b), 416.967(b). Thus, an individual would not be able to hold onto a cane while lifting and/or carrying objects." *Id.* at 15 (citing *Love v. Comm'r of Social Sec.*, 605 F. Supp. 2d 893, 907 (W.D. Mich. 2009)). This argument is based on pure speculation and fails to demonstrate that the ALJ erred. Namely, there is no medical evidence that Sayles requires this hand-held assistive device to ambulate or lift and carry objects. At the hearing Sayles testified that Dr. Boyde J. Harrison and Dr. Ali prescribed the use of a cane, (R. 610); however, the medical evidence of record simply fails to support this assertion. *See generally* (R. 428-448, 538-540) (medical records from Dr. Harrison); (R. 508-519, 554-598) (medical records from Dr. Ali).

In fact, Dr. Harrison's treatment notes from the September 11, 2007 "Disability Medical Examination" maintain that Sayles "states he is suppose to walk with a cane, but suddenly he had no difficulty in ambulating into the office,"

and "[t]he patient walks into the exam room without difficulty." (R. 538-539). Additionally, on June 23, 2005, Dr. M. Clarke Woodfin, Jr. reported that Sayles exhibited an "[e]rect gait without limp, spasticity or ataxia; possibly a hint of a limp favoring the left lower extremity after squatting and arising. Specifically, no assistive device was brought." (R. 391). Dr. Woodfin also stated that Sayles "[s]tands well on either leg alone. Toe and heel walking, tandem walking done fairly well. Goes to a one-half squat and arises with excellent effort, going no farther because of low back pain." (R. 392). Moreover, Alwyn S. Whitehead, Jr., who performed Sayles' psychological evaluation on August 29, 2005, provided "[t]here is no evidence of difficulty with gait or balance. The claimant did not appear to be in any pain." (R. 422). And, similarly, Dr. Diana Warren, a treating physician, found Sayles' "[g]ait intact. Station, posture normal" on October 11, 2005. (R. 488). Accordingly, as there is no medical evidence requiring or explaining the use of a hand-held assistive device, the mere fact that Sayles voluntarily utilizes such a device minimally demonstrates any limitations on the ability to lift and carry 10 pounds. Therefore, the substantial evidence supports the ALJ's RFC determination as it relates to Sayles' ambulating abilities and the exertional limitations of "light work."

B.  Sit/Stand Option

In a related contention of error, Sayles argues that the ALJ's hypothetical to the VE "improperly require[d] the VE to assume that a claimant who uses a cane can do any job requiring a sit/stand opinion." Doc. 9, at 16. Generally, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). Here, at the hearing, the ALJ established a hypothetical where the individual could perform "light work," but, among other exertional limitations, "based upon his use of a cane and walking[,] he would be limited to a sit/stand at will type of job." (R. 625-626). Thus, the ALJ's hypothetical required the VE to consider an individual that utilizes a cane and therefore is limited to a job with a sit/stand option. Using this hypothetical, the VE detailed a significant number of jobs that exist in the national economy consistent with the limitations stated, and explained:

> I'm aware of the jobs which accommodate the sit/stand option through the observation of the work being performed in the region and contact with employers in the region. The Dictionary of Occupational Titles does not separate jobs out according to those that do permit the sit/stand option so it is necessary for me to observe the work being performed in the actual workplace and to extrapolate the number of jobs from my observation of those jobs in the workplace.

(R. 628). Put simply, the ALJ's hypothetical and the VE's explanation reveal that

the VE considered the exertional limitations at issue, *including* Sayles' walking difficulties and use of a cane—for which Sayles offers no medical documentation supporting its necessity, *see infra*—, and determined that jobs still exist that Sayles can perform. Thus, pursuant to *Wilson*, 284 F.3d at 1227, the substantial evidence supports the VE's testimony and the ALJ's finding that Sayles is not disabled.[2]

### C. Development of Medical Record

Sayles further claims that he "was clearly prejudiced by the ALJ's refusal to consider [his] diabetes as a possible severe impairment or require further tests to ascertain the severity of that alleged condition." Doc. 9, at 17. The court disagrees because "the claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Here, Sayles failed to meet his burden. Specifically, the medical evidence simply fails to show that Sayles suffers from diabetes. As stated previously, a physical or mental impairment is "an impairment that results from anatomical, physiological, or

---

[2] In a footnote, Sayles also states "[c]onsidering the claimant's dyslexia and inability to read, there is no substantial evidence to support the ALJ's decision that the claimant is going to be able to read well enough to perform an inspection job or fill out inspection reports in any event." Doc. 9, at 16 n.1. This argument is also purely speculative. The VE heard Sayles' testimony that he has trouble reading and suffers from dyslexia, (R. 605, 608), and still opined that jobs exist in the national economy given Sayles' education level, (R. 625-628).

psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). *See also Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (an acceptable medical source is required to establish the existence of an impairment); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).").

Dr. Warren's treatment notes from October 11, 2005 provide that Sayles "says that his sugar has been as low as 30 at times" and "states [he] has been having hypoglycemic episodes, yesterday BS was 30 this am was 47 or 57. Pt states has [history] of these episodes." (R. 488). Critically, however, Dr. Warren offers no diagnosis of diabetes, and, in fact, Dr. Michael Yordy in his January 17, 2005 "History and Physical" of Sayles reported "[n]o diabetes" in the "Review of Systems" section. (R. 456-457). Furthermore, after reviewing the medical record, the undersigned finds no other mention or diagnosis of diabetes. Accordingly, the ALJ committed no error in his analysis, or lack thereof, regarding diabetes as a medically determinable impairment.

D.  Appeals Council Review

Finally, Sayles contends that the "Appeals Council erred in this case by

refusing to consider Dr. Ali's functional assessment and pain assessment submitted to the Appeals Council after the unfavorable ALJ decision by the claimant's new counsel." Doc. 9, at 17. The court disagrees for two reasons. First, there is no indication that Dr. Ali's July 12, 2010 Functional Assessment applies to the relevant time periods. (R. 555-560). To establish eligibility for DIB, the claimant must "demonstrate disability on or before the last date for which []he [was] insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Similarly, to establish eligibility for SSI, the claimant must demonstrate a disability on or before the ALJ's decision. *Id.* Thus, here, the relevant evidence for Sayles' DIB claim must predate September 30, 2005, (R. 28), and, for the SSI claim, the evidence must predate January 22, 2009, (R. 24). Furthermore, the Federal Regulations provide that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2008) (holding that "[t]he Appeals Council must consider new, material, and chronologically relevant evidence"). Unfortunately for Sayles, Dr. Ali's Functional Assessment offers no indication that it pertains to Sayles' functional capacity *on or before* January 22, 2009 or September 30, 2005.

Rather, it appears that the Functional Assessment describes Sayles' current condition on July 12, 2010—almost 18 months *after* the ALJ's decision. (R. 555-560. Accordingly, the Functional Assessment is improper new evidence, and as such, remand is not warranted based on the substance of the assessment.

Additionally, the Appeals Council's letter denying review indicates that it reviewed the additional evidence Sayles submitted and found that "this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 6-8). This decision is also supported by the substantial evidence. After the ALJ hearing, Sayles submitted Dr. Ali's July 12, 2010 Functional Assessment and Dr. Ali's August 31, 2007 - May 24, 2010 treatment records regarding Sayles. These treatment notes and the medical record as a whole reveal that the Appeals Council properly found no justification for overturning the ALJ's decision.

Generally, "[i]t is well-established that 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Eleventh Circuit instructs that "good cause" exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence

supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Here, Dr. Ali maintained in the Functional Assessment that "[p]ain is present and found to be virtually incapacitating to this individual" and that Sayles' "medical condition, including pain or any other subjective symptoms [would] compromise [his] ability to sustain work activity on a regular or continuous basis."  (R. 557).  However, as it relates to the medical records *predating* January 22, 2009, *see supra*, on August 31, 2007, Dr. Ali provided that "pt is taking all medications.  Pain improving," and, as it relates to a musculoskeletal exam, "[m]uscle strength full and strength symmetric, normal muscle tone without any atrophy or abnormal movements."  (R. 598). Similarly, on June 30, 2008, Dr. Ali noted that Sayles "[n]ow is able to caoch[sic] the kids and play out with them[,] feels we have given hiom[sic] his life back . . . . Pt has lost 70 pounds because now he []can work and exercise more."  (R. 590). On August 5, 2008, after EMG/NCS testing, Dr. Ali found "no electrophysical evidence of Carpal Tunnel Syndrome in both upper extremity.  There is no electrophysical evidence of peripheral neuropathy in both upper extremity.  There is no electrophysical evidence of radiculopathy in left upper extremity.  There is no electrophysical evidence of peripheral neuropathy in bilateral lower extremity."

(R. 588). And finally, on December 19, 2008, Dr. Ali's notes establish that Sayles "rates back pain on NRS scale as 4, numbness as 4. Had lost hope and ever since has been here he feels that now he has hope and can now play with his 6 yr old." (R. 579). Additionally, while Sayles had a "mild bulging disc L4-5, L5-S1," all other tests on this date appear negative and Sayles still exhibited full muscle strength and "strength symmetric, normal muscle tone without any atrophy or abnormal movements." *Id.*

Therefore, Dr. Ali's relevant treatment notes—those before January 22, 2009—are simply inconsistent with his July 12, 2010 conclusion that Sayles suffers from *debilitating* pain. Accordingly, the court finds no error in the Appeals Council's decision to uphold the ALJ.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Sayles is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 13th day of August, 2012.

_____
                              **ABDUL K. KALLON**
                    UNITED STATES DISTRICT JUDGE